UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT BRADFORD, JR., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | CASE NO. 2:17-cv-00442 JRC <br><br> ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 7). This matter has been fully briefed. *See* Dkts. 11, 12, 13.

After considering and reviewing the record, the Court concludes that the ALJ erred when he failed to consider properly plaintiff's severe impairments of chronic pain

and diabetes at Step Two. The ALJ also erred in his assessment of plaintiff's testimony when formulating the residual functional capacity ("RFC"). Had the ALJ properly considered plaintiff's severe impairments at Step Two and properly incorporated them into his assessment of the RFC, the RFC may have included additional limitations.

Because these errors are not harmless, this matter is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and remanded to the Acting Commissioner for further consideration consistent with this order.

## BACKGROUND

Plaintiff, ROBERT BRADFORD, JR., was born in 1962 and was 44 years old on the alleged date of disability onset of April 12, 2006. *See* AR. 232-40. Plaintiff completed the tenth grade and has not obtained his GED. AR. 62. Plaintiff has some work experience as a janitor, clay mixer, kitchen worker and produce stock/floor worker. AR. 270-81.

According to the ALJ, plaintiff has at least the severe impairments of "degenerative disc disease, trochanteric bursitis, status post femur fracture (with open reduction and internal fixation), depressive disorder, and mild degenerative joint disease of the knee (20 CFR 416.920(c))." AR. 40.

At the time of the hearing, plaintiff was living with his fiancée. AR. 62.

## PROCEDURAL HISTORY

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration. *See* AR. 92, 105. Plaintiff's requested hearing was held

before Administrative Law Judge S. Andrew Grace ("the ALJ") on February 5, 2014. *See* AR. 53-91. On March 6, 2014, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR. 35-52.

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Did the ALJ err in determining that a job plaintiff did in the past, that of office helper, actually qualifies as past relevant work; (2) Is the job of office helper beyond the abilities of an individual who is limited to simple, routine, repetitive tasks consistent with unskilled work; (3) Did the ALJ err at step 5 by identifying the job of laundry worker as within the ability of the claimant when it is a semi-skilled job, beyond the ability of a person limited to unskilled jobs; and (4) Did the ALJ err by failing to take into consideration the functional limitations caused by the fact that plaintiff is an insulin dependent diabetic and has other significant medical problems that restricts his physical abilities to less than the light exertional level. *See* Dkt. 11, p. 1.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

# DISCUSSION

**(1) Whether the ALJ erred in failing to properly consider plaintiff's diabetes and chronic pain as severe impairments at Step Two.**

Plaintiff argues that the ALJ erred at Step Two by failing to properly consider his diabetes and chronic pain. Step Two of the administration's evaluation process requires the ALJ to determine whether the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1290 (quoting 20 C.F.R. §140.1521(b)). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality having 'no more than a minimal effect on an individual[']s ability to work.'" *Id.* (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting Social Security Ruling "SSR" 85-28)).

The Step Two inquiry is merely a threshold determination as to whether a claimant has raised a "prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007); *see also Smolen*, 80 F.3d at 1290 (noting the Step Two determination is a *de minimis* screening device used to dispose of groundless claims). An impairment or combination of impairments may be found "not severe only if the evidence establishes a

slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290.

### a. Chronic Pain

Although the ALJ determined that plaintiff has severe impairments related to degenerative disc disease, trochanteric bursitis (related to his hip pain), status post femur fracture, and mild degenerative joint disease of the knee, the ALJ did not address plaintiff's chronic pain at Step Two. "[I]n evaluating a claimant's subjective complaints of pain [or other symptoms], the adjudicator must give full consideration to all of the available evidence, medical *and other,* that reflects on the impairment and any attendant limitations of function." *Smolen*, 80 F.3d at 1285 (citation omitted) (emphasis in original). In addition, the ALJ is "required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity" at Step Two. *Id.* at 1290; *see also Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (an ALJ "may not reject significant probative evidence without explanation").

As noted by plaintiff, the record demonstrates that plaintiff experienced chronic pain throughout the alleged period of disability after multiple surgeries, a shattered femur and one leg ending up longer than the other. *See, e.g.*, AR. 1370. On April 4, 2012, plaintiff was treated by Katrina Grant, M.D. AR. 1370-71. Dr. Grant observed that plaintiff had limited range of motion in all directions and that plaintiff had chronic back pain. AR. 1370-71. On July 17, 2012, Dr. Grant treated plaintiff for "[l]ots of back pain, hip and left knee pain" and "++muscle spasm" in his back. AR. 587. She observed that plaintiff had limited range of motion in his back due to pain and that even though he had

"nearly intact active ROM" on his left knee, plaintiff resisted flexion and extension due to pain. AR. 588. She diagnosed plaintiff with knee pain and chronic low back pain. AR. 592. On April 18, 2013, plaintiff was assessed by Physician Assistant Brandy Cannon with knee pain and chronic leg pain. AR. 1441. On May 15 and June 25, 2013, Physician Assistant Cannon again assessed plaintiff with chronic back, left knee, and leg pain. AR. 1444-46. On June 5, 2013, plaintiff was diagnosed by George Veech, M.D. with chronic pain syndrome and sciatica. AR. 1334-1340.

With respect to functional limitations related to his chronic pain, plaintiff testified that as a result of his chronic pain, he cannot straighten or bend his left leg and he has severe pain in his hips and back. AR. 64. Plaintiff testified that he can walk for five to fifteen minutes before needing to stop and sit down. AR 65. Plaintiff also testified that if he walks for more than fifteen minutes he experiences excruciating pain. AR. 65. With respect to standing, plaintiff testified that he can stand for 15 minutes before needing to sit down, and he also testified that sitting is difficult for him for long periods of times because of his back and hip. AR. 65-66.

Thus, here, contrary to the ALJ findings, there is significant medical history which demonstrates a longitudinal history of chronic pain. Although no medical providers opined regarding functional limitations related to plaintiff's chronic pain, at Step Two the ALJ must consider "medical *and other*" evidence that reflects on the impairment and resulting limitations, including in this case plaintiff's testimony. *See Smolen*, 80 F.3d at 1285 (emphasis in original). The ALJ erred at Step Two by failing to discuss the probative evidence regarding plaintiff's chronic pain as well as evidence of plaintiff's

functional limitations related to the chronic pain. *See* AR. 45. As the Step Two determination is a *de minimis* screening device used to dispose of groundless claims, the Court finds that plaintiff's chronic pain is a severe impairment at Step Two. *See Smolen*, 80 F.3d at 1290.

The ALJ's error in his treatment of plaintiff's chronic pain is harmless if he accounted for plaintiff's chronic pain when assessing plaintiff's RFC. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Plaintiff's testimony is the only evidence of functional limitations related to his chronic pain impairment. *See* AR. 61-63. No medical providers assessed functional limitations based on plaintiff's chronic pain diagnosis. *See* AR. 587-92, 1334-40, 1370-71, 1441-46 (all diagnosing plaintiff with chronic pain, but not opining as to any functional limitations based upon the diagnoses). The ALJ failed to include all of the limitations plaintiff testified about regarding his chronic pain in plaintiff's RFC. *See* AR. 42. As a result, the ALJ's error regarding chronic pain at Step Two was harmful because the ALJ did not properly account for plaintiff's chronic pain when assessing plaintiff's RFC. *See Lewis*, 498 F.3d at 911; *see also Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)) ("ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination'"). If the ALJ had properly accounted for plaintiff's limitations in the RFC, the ultimate disability determination

could have been different, and thus, the error is not harmless. Upon remand, the ALJ shall reevaluate plaintiff's impairments at Step Two, including plaintiff's chronic pain.

**b. Diabetes**

At Step Two the ALJ also determined that plaintiff's diabetes is not a severe impairment and noted that:

> [C]laimant has received treatment for diabetes over several years. Records show good control of diabetes when the claimant takes his medications and tests his blood sugar level regularly. The claimant testified about diabetes-related eye surgeries, but the medical evidence shows no significant limitations from diabetes. No provider gave limitations related to diabetes. Providers told the claimant to treat diabetes by modifying lifestyle and diet.

AR. 41. Plaintiff is correct that contrary to the ALJ's determination, lab results and doctors' notes revealed that plaintiff's diabetes was not well controlled throughout the period of disability. *See*, *e.g.*, AR. 598, 614, 624, 1371. As noted above, the ALJ must consider all evidence of functional limitations at Step Two, not just the opinions of medical providers. *See Smolen*, 80 F.3d at 1285. Although providers did not opine regarding functional limitations caused by plaintiff's diabetes, plaintiff testified that he experiences nausea and vision problems as a result of his diabetes. AR. 66-67; AR. 74. Plaintiff also testified that his diabetes causes his feet to tingle "like needles" due to bad circulation in his body. AR. 72-73. Plaintiff further testified that his diabetes causes him severe pain. AR. 73. Given the *de minimis* screening standard at Step Two, the Court finds that the ALJ erred in failing to find plaintiff's diabetes a severe impairment at Step Two.

The Court also finds that the ALJ's error in considering plaintiff's diabetes at Step Two was not harmless error. As noted above, the ALJ's error in his treatment of plaintiff's diabetes is harmless if he accounted for plaintiff's diabetes when assessing plaintiff's RFC. *See Lewis*, 498 F.3d at 911. When determining the RFC, the ALJ noted plaintiff's diabetes symptoms when reciting plaintiff's testimony regarding his limitations. *See* AR. 43. However, the ALJ did not explain whether he considered or discounted plaintiff's testimony regarding the diabetes-induced limitations, nor is it apparent that the ALJ incorporated the diabetes-induced physical limitations into the RFC. *See* AR. 42-43. Upon remand, the ALJ shall reevaluate plaintiff's severe impairment of diabetes at Step Two.

**(2)　　Whether the ALJ erred in discounting plaintiff's testimony regarding his physical limitations.**

Plaintiff also argues that the ALJ erred in assessing his subjective complaints. Dkt. 12, pp. 12-13. If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1284 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("There is no conflict in the caselaw, and we reject the government's argument that *Bunnell* excised the "clear and convincing" requirement"); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Bunnell v. Sullivan*, 947 F.2d at 343, 346-47). As with all of the findings by the ALJ, the specific, clear and convincing

reasons also must be supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at 1214 n.1 (citing *Tidwell*, 161 F.3d at 601)).

Here, the ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR. 43. To reach this decision, the ALJ observed that plaintiff's "daily activities show fewer limitations than alleged" because he (1) "had a laundry job overnight during his 2012-13 jail term"; (3) takes care of his disabled fiancée; (3) performs household chores; and (4) "maintains his hygiene, pays bills, does laundry, washes dishes, shops, uses public transportation, and cleans." AR. 43. The ALJ also noted that plaintiff has a poor work history. AR. 43.

First, the ALJ rejected plaintiff's testimony regarding his limitations as inconsistent with his activities of daily living. AR. 43. Regarding activities of daily living, the Ninth Circuit repeatedly has "asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn*, 495 F.3d at 639 (citing *Fair*, 885 F.2d at 603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their

transferability to conclude that a claimant's daily activities warrant an adverse determination regarding if a claimant's statements should be credited. *Orn*, 495 F.3d at 639 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

In this case, the ALJ did not make a determination that plaintiff's activities of daily living meet the threshold for transferable work skills. *See* AR. 43. The ALJ also did not explain how plaintiff's activities contradict his testimony that he cannot stand or walk for longer than 15 minutes. Indeed, the Court notes that one could maintain hygiene, pay bills, do laundry, wash dishes, shop, use public transportation, and clean by not standing or walking for longer than 15 minutes.

The ALJ also did not explain how caring for plaintiff's fiancée contradicts plaintiff's testimony regarding his functional limitations. Recently, regarding taking care of children, the Ninth Circuit noted that "the mere fact that [a claimant] cares for small children does not constitute an adequately specific conflict with her reported [or opined] limitations." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017); *see also id.* at 676 (the "ALJ did not develop a record regarding the extent to which and the frequency with which Trevizo picked up the children, played with them, bathed them, ran after them, or did any other tasks that might undermine her claimed limitations, nor did the ALJ inquire into whether Trevizo cared for the children alone or with the assistance of her grandchildren or other family members"). The court noted that the claimant's "childcare responsibilities permit her to rest, take naps, and shower repeatedly throughout the day, all of which would be impossible at a traditional full-time job. *Id*. at 682. Similarly, here, plaintiff testified that he lives with his fiancée, that she does not work, and that she

is mentally and physically disabled. AR. 62. Plaintiff further testified that his fiancée had an accident and that he helps her get dressed and with chores to the best of his ability. AR. 62-63. The ALJ did not develop the record regarding the extent to which and the frequency with which plaintiff cared for his fiancée. In fact, nothing about plaintiff's testimony regarding caring for his fiancée contradicts his testimony regarding his physical limitations.

The ALJ's implied finding that plaintiff conducts his daily activities differently than he indicates is not based on substantial evidence in the record. Therefore, it appears to be based on speculation. *See* SSR 86-8, *available at* 1986 WL 68636, at *8 (an ALJ may not speculate). To avoid circular reasoning, an ALJ must have a valid reason for finding a claimant not credible before finding that a claimant does his activities of daily living differently than the claimant testifies to, then relying on this speculation regarding the daily activities in order to support an adverse finding regarding if a claimant's statements should be fully credited. *See id.* An ALJ's finding that a claimant is not credible must be based on specific evidence that undermines the claimant's complaints, not on findings that presume first that a claimant is not credible. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)).

Moreover, with respect to pain, the Ninth Circuit recently revisited this issue of activities of daily living and their consistency with pain-related impairments described by a claimant:

> [T]he ALJ erred in finding that these activities, if performed in the manner that [the claimant] described, are inconsistent with the pain-related impairments that [the claimant] described in her testimony. We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day. *See, e.g., Smolen v. Chater*, 80 F.3d 1273, 1287 n.7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted in original)); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.") Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," we have held that "[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted in original): *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical difference between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." (citations omitted in original)).

*Garrison v. Colvin*, 759 F.3d 955, 1016 (9th Cir. 2014). Similarly, here, the activities cited by the ALJ are home activities—chores, personal hygiene, paying bills and shopping—and may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. *See id.* Thus, the ALJ erred in discounting plaintiff's testimony based upon his activities of daily living.

Second, the ALJ rejected plaintiff's testimony because he worked the overnight shift while in jail. Defendant argues that a claimant's allegations of disabling pain or

other subjective symptoms may be discredited by employment. *See* Dkt. 12, p. 5 (citing 20 CFR § 416.971; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009)). While that may be true in some cases, in this case nothing in the record suggests that plaintiff's work in the jail laundry contradicts his testimony regarding his physical limitations. Indeed, the only evidence related to plaintiff's work in the jail is from plaintiff's testimony, and he testified that he did not stand for longer than 15 minutes at a time while working in the jail laundry. AR. 80.

Third, the ALJ rejected plaintiff's testimony because he has a poor work history. AR. 43. A poor work history may constitute a valid basis for discounting a claimant's subjective symptom testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, even assuming this is a valid reason to discount plaintiff's testimony in this case, it would be the *only* valid reason. It is not clear from the record as a whole that plaintiff's poor work history is a clear and convincing reason to discredit all of his allegations.

Regardless, the Court already has concluded that this matter should be reversed and remanded due to errors at Step Two, *see supra*, Section I. The ALJ should correct the errors in the evaluation of plaintiff's allegations following remand of this matter. Defendant also argues that the ALJ rejected plaintiff's subjective complaints because "the ALJ found that the objective medical evidence did not support [plaintiff's] allegations." Dkt. 12, pp. 2-4 (citing AR. 44-45). The Court is not convinced that the ALJ was relying upon the medical evidence to reject plaintiff's symptom testimony. Rather, it appears the

ALJ was simply reciting the medical evidence in the record without explaining how that evidence relates to plaintiff's testimony and statements. *See* AR. 44-45.

Even if the Court construes the recitation of medical evidence as a reason for discounting plaintiff's symptom testimony, the Court notes that "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Rather, to discount a claimant's testimony regarding pain, an ALJ "must state *which* [such] testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 917 (emphasis added); *see also Lester*, 81 F.3d at 834. Here, the ALJ summarized evidence contained in medical records, but none of the cited medical records are moored to specific testimony or statements the ALJ found not credible. *See* AR. 23-26. Thus, the ALJ did not reach the clear and convincing standard to reject plaintiff's testimony by summarizing medical records.

**(3) Whether the ALJ erred by finding plaintiff capable of performing past relevant work or, in the alternative, work existing in the national economy.**

Plaintiff also asserts that the ALJ erred in finding him capable of performing past relevant work or, in the alternative, work existing in the national economy. Dkt 11, pp. 3-9. Defendant concedes that the ALJ erred in finding plaintiff capable of performing past relevant work by failing to properly consider whether plaintiff's prior work amounted to substantial gainful activity. *See* Dkt. 12, pp. 9-10. Defendant further

concedes that the ALJ erred in finding plaintiff capable of performing work existing in the national economy as a laundry worker by improperly finding that plaintiff could perform work that exceeded his reasoning level. *See* Dkt. 12, pp. 10-11.

At Step Four in the evaluation process, the ALJ must determine whether or not a claimant's impairment(s) prevents the claimant from doing past relevant work. *See* 20 C.F.R. § 404.1520(f). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001) (citations omitted). The ALJ must make "specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Id.* (citations omitted). If the ALJ reaches the final step in the sequential analysis, the burden shifts to the Commissioner to prove that the claimant can perform other work in the national economy, given his age, education, RFC, and past work experience. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *see also* 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5) (vii).

The Court has concluded the ALJ committed harmful error when he failed to properly evaluate plaintiff's severe impairments at Step Two and committed errors when evaluating plaintiff's statements and testimony. The ALJ must therefore reassess the RFC on remand. *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 690 ("an RFC that fails to take into account a claimant's limitations is defective"). As the ALJ must reassess plaintiff's RFC on remand, he must also re-evaluate whether plaintiff is capable of performing past relevant work—if such work exists—or the findings at Step

Five to determine if plaintiff can perform the jobs identified by the vocational expert in light of the new RFC. In light of defendant's concession that the ALJ erred in failing to properly consider past relevant work and work existing in the national economy, the ALJ (1) shall ensure that he properly assesses whether plaintiff's past work amounts to substantial gainful activity and qualifies as substantial gainful activity, and (2) shall also ensure that any jobs existing in the national economy can be performed by plaintiff at the reasoning level consistent with his RFC.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 2nd day of November, 2017.

J. Richard Creatura
United States Magistrate Judge